# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**ROBERT EARL ELLIS**                                                        **PLAINTIFF**

**v.**                                                   **CAUSE NO. 3:21-cv-00047-TSL-LGI**

**LT. THELMA MORGAN, NURSE UNKNOWN
ROBINSON, WENDELL BANKS, RONALD KING,
DR. WILLIAM BRAZIER, DR. UNKNOWN SCOTT,
RICHARD PENNINGTON, AND LAURA HOPSON**            **DEFENDANTS**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation on *Centurion Defendants' Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies* [53], filed by Defendants Dr. William Brazier and Dr. Collette Scott, on May 10, 2022. Also before the Court is *Defendants' Motion for Partial Summary Judgment Based on Failure to Exhaust Administrative Remedies* [65], filed by Defendants Ronald King, Richard Pennington, Thelma Morgan, Laura Hopson, and Wendell Banks, on June 20, 2022. Plaintiff Robert Earl Ellis, Sr. has filed no responsive documents to either of the Defendants' motions. Having considered the submissions, the record, and relevant law, the undersigned recommends that both the motion for summary judgment [53] and the motion for partial summary judgment [65] should be granted. The undersigned finds that Plaintiff failed to exhaust the MDOC's administrative grievance procedure before filing this case. Therefore, Defendants are entitled to summary judgment in accordance, as discussed below.

### I.     Relevant Procedural History

Plaintiff Robert Earl Ellis, Sr. ("Plaintiff" or "Ellis"), a postconviction inmate in the

custody of the Mississippi Department of Corrections ("MDOC"),[1] brought the instant case *pro se* and *in forma pauperis* using a form available to prisoners for filing complaints for violations of civil rights pursuant to 42 U.S.C. § 1983. On January 25, 2021, Plaintiff filed suit against MDOC and its employees Lieutenant Thelma Morgan, Warden Wendell Banks, Ronald King, Richard Pennington, Laura Hopson, Nurse Unknown Robinson, Dr. William Brazier, and Dr. Colette Scott. *See* Doc. [1], [21].[2] Plaintiff's complete allegations are set forth in his Complaint [1] and Amended Complaint [21] and were augmented by his sworn testimony at a *Spears*[3] hearing before the United States Magistrate Judge on May 18, 2022. *See* Doc. [62], Transcript of Omnibus Hearing.

Ellis was a postconviction inmate housed at Central Mississippi Correctional Facility ("CMCF") in Pearl, Mississippi when the alleged events giving rise to this lawsuit began; these events allegedly continued after he was transferred to the Mississippi State Penitentiary ("Parchman"). Plaintiff alleges constitutional violations of inadequate conditions of confinement, denial of medical care, and denial of legal assistance. Specifically, Plaintiff alleges that, upon his

---

[1] Plaintiff was released from incarceration on or about May 10, 2021, but he remains on probation or parole under the custody of MDOC. The Court takes judicial notice of this information, as provided by website: http://vineline.vineapps.com/persondetail/offender/9878386;tabIndexToSelect=0. *See also* Change of Address [Doc. 15], filed by Plaintiff, on June 7, 2021.

[2] Nurse Robinson has never been properly identified, served with process or filed an Answer in this case. On October 6, 2021, the Court entered an Order [23] directing the Clerk of Court to issue a Notice of Lawsuit to Defendants. A Request for Waiver of Service [25] was sent to Defendants Nurse "Unknown" Robinson, Dr. "Unknown" Brazier, and Dr. "Unknown" Scott ("Centurion Defendants"). On November 10, 2021, Notices of Appearance and a Waiver of Service was filed on behalf of Dr. William Brazier. *See* Docs. [28-30]; [34]. On November 12, 2021, a Waiver of Service [35] was filed on behalf of Dr. Scott. A Response [36] to Court's Order [23] was filed by counsel for Centurion of Mississippi, LLC, who appeared specially for the sole purpose of responding to the Order [23]. In its response Centurion advised that, after investigating, it was unable to determine the identity of Nurse Robinson. Centurion advised it was unable to locate any individuals working with Centurion at Central Mississippi Correctional Facility under the name "Robinson." Centurion did, however, identify one possible healthcare professional named Bridget Robinson, but it advised Bridget Robinson was a temporary worker with Maxim Healthcare Staffing. Based on the information provided, Centurion advised it was unable to waive service on behalf of the named defendant, identified as Nurse Robinson. *See* Doc. [36] at 1. A copy of the Response [36] was provided to Plaintiff. *See* Certificate of Service, Doc. [36] at 3. On November 18, 2021, the Court ordered Plaintiff to provide additional information to identify Nurse Robinson or advise as to whether he wished to voluntarily dismiss this named defendant from the lawsuit. *See* Doc. [37]. From the docket, it does not appear Plaintiff responded to the Court's Order [37]. Therefore, Nurse Robinson has never been identified, served or filed any Response to Plaintiff's Complaint or Amended Complaint. MDOC was dismissed from this lawsuit, via Order [22], on October 5, 2021.

[3] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

arrival at CMCF, he was placed into an unsanitary housing unit. Doc. [21] at 1. He claims he had been living in the unit for over two months when he requested cleaning supplies from Lieutenant Thelma Morgan to clean "the shower walls and floor [that] was covered with black, green, and yellow slimy mold[-]like substance." *Id*.; *see also* Doc. [1] at 5. Plaintiff claims that, Lt. Morgan, who was the commanding officer over his unit, refused him the cleaning supplies on May 7, 2020 and instead cursed him out and told him to "get down on [his] hands and knees and clean it up." Doc. [21] at 1; *see also* Doc. [1] at 4. Plaintiff alleges that, a few hours after he was denied the cleaning supplies, he fell in the shower. *Id*.

Plaintiff asserts he was denied medical care for injuries he sustained when he fell. Doc. [1] at 5. Plaintiff claims that he suffered a cut on the back of his left shoulder. *Id*. He alleges that, on May 8, 2020 (one day after the alleged incident), he sought medical assistance from Nurse Robinson for the cut on his shoulder but he was denied medical care. *Id*. He further alleges he was also denied medical care by both Dr. Brazier, the medical director, and Ronald King, superintendent. Doc. [21] at 1. Plaintiff claims he has suffered additional injuries related to his alleged fall in the shower. He claims he has loss of skin on his buttock, has recurring rashes on his back, legs, arms and head, and has a fungus that spread to his blood stream, resulting in adverse effects to his heart and breathing. Doc. [1] at 5; *see also* Doc. [21] at 2.

Plaintiff also alleges Superintendent King had him "shipped" from CMCF to Parchman in retaliation for his complaints. *Id*. Once at Parchman, Plaintiff claims he was also denied medical care by Dr. Scott, which caused his conditions to worsen. *Id*. He further claims he was denied legal assistance by Defendants Richard Pennington and Laura Hopson, who he states are in charge of the legal services at Parchman. *Id*.

3

In their *Motions* [53], [65] Defendants argue they are entitled to summary judgment, as the Plaintiff failed to exhaust MDOC's administrative grievance procedure before filing this case.

## STANDARD

### I. Summary Judgment

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). A genuine issue of material fact exists where a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). When ruling on a motion for summary judgment, the court must construe the facts and evidence in the light most favorable to the nonmoving party. *Ford, Bacon & Davis, LLC v. Travelers Ins. Co.,* 635 F.3d 734, 736 (5th Cir. 2011) (citing *Holt v. State Farm Fire & Cas. Co.,* 627 F.3d 188, 191 (5th Cir.2010)).

If the moving party meets its burden, the "nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "The nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but instead must show that there is an actual controversy warranting trial." *Blanks v. Claiborne*, 2014 WL 1236005, at *2 (S.D. Miss. Mar. 25, 2014) (citing *Little,* 37 F.3d at 1075)). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Id*. (emphasis omitted). "It is improper for the district court to 'resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence.'" *McDonald v. Entergy Operations, Inc.*, Civil Action No. 5:03-cv-241-BN, 2005 U.S. Dist. LEXIS 43286, 2005

WL 2474701, at *3 (S.D. Miss. Apr. 29, 2005) (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980)).

The nonmovant is not required to respond to the motion until the movant properly supports its motion with competent evidence. *Russ v. Int'l Paper Co.*, 943 F.2d 589, 591 (5th Cir. 1991), cert. denied, 503 U.S. 987, 112 S. Ct. 1675, 118 L. Ed. 2d 393 (1992). In the event the moving party has made an affirmative showing that it is entitled to summary judgment, the burden shifts to the non-moving party to come forward with evidence that creates a genuine issue for trial. *Celotex*, 477 U.S. at 330. In deciding a motion for summary judgment, the Court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little*, 37 F.3d 1069, 1075)). The nonmovant cannot survive a proper motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir. 1988); *see also Celotex*, 477 U.S. at 325-26. Instead, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**The Exhaustion Requirement**

Under the Prison Litigation Reform Act ("PLRA"), Plaintiff's claims must be dismissed if he has failed to exhaust available administrative remedies before filing suit:

> Exhaustion of administrative remedies through the prison grievance system is a jurisdictional prerequisite for lawsuits filed pursuant to 42 U.S.C. § 1983. *Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001).
>
> > No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

> confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (holding "proper exhaustion of administrative remedies is necessary"). The Fifth Circuit takes a "strict approach" to the exhaustion requirement. *See Johnson v. Ford*, 261 Fed. App'x. 752, 755 (5th Cir. 2008). Exhaustion is mandatory for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Dismissal is appropriate where an inmate has failed to properly exhaust the administrative grievance procedure before filing his complaint. *Gonzales v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement - the grievance process must be carried through its conclusion before suit can be filed under the Prison Litigation Reform Act. *Wright*, 260 F.3d at 358.

*Dahl v. Fisher*, Civil Action No. 1:16-cv-82-RHW, 2016 WL 7335645, at 2 (S.D. Miss. Dec. 16, 2016).

The law also requires that prison officials be provided fair notice of a prisoner's specific complaints, as well as the "time and opportunity to address [the] complaints internally." *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004). "[F]or many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem." *Id*. at 522.1 However, exhaustion is not *per se* inadequate merely because a prison official sued in an § 1983 action was not named in the administrative grievance. *Jones v. Bock*, 549 U.S. at 218. Rather, the prison's grievance procedure controls, and that procedure may require the prisoner to reference a particular official. *Id. See also Marsalis v. Cain*, Civil Action No. 12-0799, 2014 WL 51215 (M.D. La. Jan. 7, 2014) (claims not raised "and/or were only alluded to so minimally as to be insufficient to provide fair notice to prison officials of the plaintiff's specific complaints . . ." were unexhausted; no specific mention of defendant made in grievance). This means that the "level of detail necessary in a grievance to comply with the grievance

6

procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*.

"Proper exhaustion is determined by reference to the state grievance procedures." *Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013) (citing *Woodford*, 548 U.S. at 217-218). Pursuant to Miss. Code Ann. § 47-5-801, the MDOC has established a two-step Administrative Remedy Program ("ARP") that prisoners must exhaust prior to filing suit under the PLRA. *Carroll v. Lee*, Civil Action No. 4:16-cv-157-MPM-RP, 2017 WL 2704121, at 3 (N.D. Miss. June 22, 2017). "The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's legal claims adjudicator within thirty days of the incident." If the inmate is dissatisfied with the response, "he may continue to the Second Step by completing an appropriate ARP form and sending it to the legal claims adjudicator." *Id.* (citing *Howard v. Epps*, No. 5:12-cv-61-KS-MTP, 2013 WL 2367880, at 2 (S.D. Miss. May 29, 2013)).[4] "If the inmate is unsatisfied with that response, he may file suit in state or federal court." *Id*.

Ignorance of the exhaustion requirement, or the procedure for seeking a remedy, does not ordinarily excuse the failure to exhaust. *McCray v. Fryer*, No. 11-1349, 2014 WL 4354537 at *3 (W.D. La. Sept. 2, 2014) (citing *Gonzalez v. Crawford*, 419 F. App'x 522, 523 (5th Cir. 2011) ("[A]lleged ignorance of the exhaustion requirement, or the fact that [the inmate] might have misconstrued the language in the handbook, does not excuse his failure to exhaust.")); *Simkins v. Bridges*, 350 F. App'x 952, 953 (5th Cir. 2009). The requirement of exhaustion is statutory and is

---

4. The ARP process is set forth in the MDOC Inmate Handbook, which is available at http://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf. The Court may take judicial notice of MDOC's Inmate Handbook. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see*, *e.g.*, *Smith v. Polk Cty., Fla.*, No. 805-cv-884-t-24, 2005 WL 1309910, at 3 (M.D. Fla. May 31, 2005) (taking judicial notice of inmate handbook and grievance procedures stated therein).

absolute under the law. 42 U.S.C. § 1997. Unlike a judge-made exception, under the statute, this Court has no authority to review a claim that was not properly exhausted.

Although Congress has statutorily mandated exhaustion, the statute itself provides an exception. Under §1997e(a), the exhaustion requirement hinges on the "availability" of administrative remedies. Inmates are required to exhaust the remedies that are available to them, but there is no exhaustion requirement where the remedies are unavailable. *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). An administrative remedy may be unavailable where prison officials are unable or unwilling to provide relief; where the scheme is "so opaque that it becomes, practically speaking, incapable of use" by an ordinary inmate, or "prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Brantner v. Freestone Cty Sheriff's Office*, 776 F. App'x 829, 833 (5th Cir. 2019) (quoting Ross, 136 S. Ct. 1859-60). The resolution of whether the process is "available" may turn on questions of fact. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Even though the Fifth Circuit requires "strict compliance" with a facility's grievance process, it has "long recognized the importance of ensuring that inmates have avenues for discovering the procedural rules governing their grievances . . . ." *Id*. at 268.

Exhaustion is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Therefore, the burden rests upon Defendants to demonstrate Plaintiff failed to exhaust his available administrative remedies prior to filing the instant suit, so as to warrant summary judgment in their favor. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Under the PLRA, Plaintiff's claims must be dismissed if he has failed to exhaust available administrative remedies before filing suit. *See* 42 U.S.C. § 1997e(a). Here, both Centurion Defendants and MDOC Defendants assert Plaintiff

8

failed to adhere to MDOC's ARP's requirements before filing the instant lawsuit, warranting dismissal of his claims, as discussed below.

## ANALYSIS

### I. Centurion Defendants

Defendants Dr. William Brazier and Dr. Collette Scott (hereinafter "Centurion Defendants") argue they are entitled to summary judgment as to Plaintiff's medical-related claims, because the Plaintiff failed to exhaust the administrative remedies available to him under MDOC's ARP, warranting dismissal under PLRA. *See* Doc. [53]. Defendants assert that Plaintiff only submitted one ARP form related to medical treatment during his time in MDOC custody, from March 5, 2020 until the time he filed the instant lawsuit. Doc. [54] at 2 (citing Doc. [53-2] at 1, Affidavit of Paul R. Pennington, Director of ARP). On the sole ARP form (MSP-20-1254) related to medical treatment, dated October 7, 2020, Plaintiff alleged that he fell in the shower, and he "filled out a sick call and asked Nurse Robinson (the white one) for aid and she refused." Doc. [53-2] at 4. Further, Plaintiff described other medical issues and asserted he "must be given medical attention at once." *Id*. At the Omnibus Hearing, Plaintiff testified that he wrote a letter to Dr. Brazier addressing his medical concerns and requesting to be seen. *See* Doc. [62] at 25:9-18. However, he stated he was never seen or treated by Dr. Brazier. *Id*. at 26:19-22. Centurion Defendants argue the only medical provider identified on the Plaintiff's grievance form is Nurse Robinson. Doc. [54] at 2. They contend the Plaintiff failed to specify any other medical provider by name or by general description. *Id*. These Defendants argue Plaintiffs' claims as to the Centurion Defendants should be dismissed, because the only medical grievance filed by Plaintiff did not identify either Dr. Brazier or Dr. Scott by name or description.. *Id*. at 4. Thus, Plaintiff's grievance did not provide fair notice to either of these Defendants. *Id*.

Defendants also contend Plaintiff failed to properly exhaust MDOC's administrative remedies, as required by the PLRA. *Id*. at 4, 6. Defendants point out that Plaintiff filed the instant lawsuit on January 25, 2021, which was *before* he received notice on February 1, 2021 of the Second Step Response, which was signed by Medical Director Dr. James Glisson, on January 26, 2021, also *after* the Plaintiff filed suit. *Id*. at 7; *see also* Doc. [53-2] at 13, Second Step Response Form, signed by Plaintiff. They argue the only grievance that potentially addressed any medical claims against these Defendants fails to name either Dr. Brazier or Dr. Scott, and the Plaintiff failed to adhere to the MDOC's ARP's next steps when he filed the instant lawsuit before the process was complete. *Id*. at 7-8. Centurion Defendants contend Plaintiff's lawsuit constitutes "pre-filing exhaustion," which is not allowed while the grievance process is pending. *Id*. at 8. Therefore, these Defendants believe summary judgment is mandatory.

MDOC has established a two-step ARP process that requires prisoners to follow all steps prior to filing a lawsuit. Here, the ARP process began when Ellis submitted his grievance (MSP-20-1254) in writing to the prison's legal claims adjudicator. After the prison official responded to the request, Plaintiff's next step was to specify whether he was satisfied or dissatisfied with the outcome of the first step, and if dissatisfied, to provide his reasoning. Plaintiff did in fact complete the first step, which afforded him access to the second step. Once Plaintiff explained that he was dissatisfied with the First-Step Response, he was required to await a Second-Step Response before filing a lawsuit. Here, Ellis filed the instant lawsuit before he received the Second-Step Response, in violation of PLRA. Plaintiff did not file a response to Defendants' motion for summary judgment, and he offered no testimony during the Omnibus Hearing explaining his failure to adhere to MDOC's ARP. Considering that Plaintiff complied with MDOC's grievance procedure nearly to its end, this Court cannot conclude that Ellis was unfamiliar with the process or assume

10

any other excuse on behalf of the Plaintiff. Exhaustion of administrative remedies through the prison grievance system is a jurisdictional prerequisite for lawsuits filed pursuant to 42 U.S.C. § 1983. Based on the foregoing, it is clear the Plaintiff failed to exhaust MDOC's grievance procedures, which warrants dismissal of Plaintiff's claims as this Court has no authority to review a claim that was not properly exhausted.

In addition to the Court's finding that Plaintiff failed to exhaust his administrative remedies, because he filed the subject lawsuit prematurely, the Court also finds the Plaintiff failed to provide Defendants Dr. Brazier and Dr. Scott notice of his claims. Thus, the Court finds Plaintiff failed to exhaust his administrative remedies as to the claims raised in his Complaint and Amended Complaint against Defendants Dr. Brazier and Dr. Scott. Accordingly, the Centurion Defendants are entitled to summary judgment as a matter of law, and the undersigned recommends that the Centurion Defendants' motion for summary judgment be granted.

## II. MDOC Defendants

Defendants Donald King, Richard Pennington, Thelma Morgan, Laura Hopson, and Wendell Banks (hereinafter "MDOC Defendants") filed their Motion for Partial Summary Judgment [65] on the basis that Plaintiff failed to exhaust the administrative remedies provided by MDOC, before filing the instant lawsuit. Defendants believe Plaintiff has failed to exhaust the administrative remedies as to each MDOC Defendant, except Lt. Morgan. Therefore, they move for partial summary judgment as to the remaining MDOC Defendants.

### a. ARP# MSP-20-1254

MDOC Defendants acknowledge that Plaintiff filed a grievance on October 7, 2020, wherein he raised claims regarding the alleged shower-incident that occurred while he was housed

11

at CMCF. Doc. [66] at 7. On his October 7, 2020 ARP Form, Plaintiff asserted the following allegations:

> I had a fall in the shower due to the floor being covered with black, yellow, and green mold or fungus. I landed on my back and backside. . . . I filled out a sick call and asked Nurse Robinson (the white one) for aid and she refused. Thereafter[,] I was transferred to MSP Parchman where I was told that due to this fall I have a 'fungus' on my rear which now has entered my entire blood stream. As a result I am losing all of the skin of my rear, and I have itchy lesions pop[p]ing up all over my body and inside my nose. . . . I must be given medical attention at once.

Doc. [65-1] at 3. In response to this grievance, Dr. Glisson, Parchman's Medical Director, instructed Plaintiff to "fill out a sick call for any needs you may have." Doc. [65-1] at 5, First-Step Response Form, dated December 9, 2020. Plaintiff received Dr. Glisson's response on December 16, 2020, and he drafted a response, advising that he was "not satisfied" with the Dr. Glisson's First-Step Response. Id. at 7-8; Doc. [66] at 7. Plaintiff again asked for medical treatment. *Id*. In the Second-Step Response, Dr. Glisson pointed out that, on January 12, 2021, the Plaintiff was seen by Dr. Del Castillo and a plan was prescribed for Plaintiff's complaints. Doc. [65-1] at 10; Doc. [66] at 7-8.

Defendants assert the only MDOC Defendant specifically named in Plaintiff's grievance is Lt. Morgan. Although Plaintiff names Warden Wendell Banks in his Complaint, he makes no specific claims against him in either his Complaint, Amended Complaint or the subject grievances. At the Omnibus Hearing, when asked if he named Banks in the ARP, Plaintiff stated, "yes, sir, I did. I think so. I'm sure I did." Doc. [62] at 12:21-24. However, a reading of the subject ARP clearly shows Plaintiff made no mention of Defendant Banks. Likewise, Plaintiff names Superintendent Ronald King in his Complaint and Amended Complaint. He also testified that he named Defendant King in the ARP. *Id*. at 12:25-13:1. But, there is no mention of Defendant King

12

in the subject grievances that give rise to the instant lawsuit. As to Defendant King, the Plaintiff, asserts in his Amended Complaint,

> I wrote a letter to Mr. King and hand delivered it to him myself as he was inspecting my housing unit. I took the letter and placed it into his hands myself as he passed by my bed. . . Mr. King did not see to it that I was cared for, even though he had been personally notified by me. On the 27th of August 2020, Mr. King had me shipped to Parchman.

Doc. [21] at 2, Amended Complaint. Defendants point out the Plaintiff neither mentions Defendant King nor his transfer from CMCF to Parchman in retaliation for his complaints about the shower and subsequent medical treatment in his grievance. Doc. [66] at 8. MDOC Defendants argue that an ARP grievance requires that all officials involved be named or at least referenced by description. *Id*. They contend the Plaintiff neither named nor generally described either Defendant Banks or Defendant King. Defendants contend Plaintiff's failure to provide this information entitles Defendants Banks and King to dismissal for failure to exhaust the administrative remedies required under PLRA. Doc. [66] at 8. They recognize that Lt. Morgan was mentioned by name, and therefore they do not move to dismiss her from the lawsuit on grounds of failure to exhaust administrative remedies.

Ellis did not name either Banks, CMCF's warden at the time,[5] or King, the prison's superintendent, in his grievance. Therefore, this Court finds neither were placed on notice of the claims against them. "The law requires that the prison officials be provided fair notice of a prisoner's specific complaints and with the 'time and opportunity to address [the] complaints internally.' *Holton v. Hogan*, No. 3:16CV625-HTW-LRA, 2018 WL 707544, at *2–3 (S.D. Miss. Feb. 1, 2018) (quoting *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004)). "Since prisoners

---

5  Defendant Wendell Banks is no longer employed with MDOC. *See* Doc. [39], Sealed Response to Court's Order [23] (wherein counsel for MDOC Defendants advised Banks is no longer employed with the Mississippi Department of Corrections and provided his last known address).

13

are generally required to follow the procedures adopted by the state prison system, the specificity requirement should be interpreted in light of the grievance rules of the particular prison system. . . ." *Id*. at 517. Even though Ellis did complain about the conditions of the shower, his alleged fall, and medical care at the CMCF, the subject ARP only relates to the alleged interactions with Lt. Morgan and a Nurse Robinson, not Defendants Banks or King.

This Court has previously noted "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. Although the MDOC program has no specific requirement that the individual prison official be named, the inmate is required to "present as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident." (*See* Mississippi Department of Corrections Inmate Handbook, Administrative Remedy Program, Chapter VIII, Section IV, Procedures D). "Effectively, this portion of the ARP requires that all officials involved be named or at least referenced by description." *Id*. at *3 (citing *Curry v. Scott*, 249 F.3d 493, 504-505 (6th Cir. 2001) (a grievance specifically complaining of a beating by one guard did not suffice to exhaust a failure to protect claim against another guard not mentioned in the grievance but who stood by and watched)).

This Court has no discretion to excuse Plaintiff's failure to exhaust. The law is clear that exhaustion must be proper and complete. To defeat a summary judgment motion, competent evidence must be provided to defeat the claims set forth by the movant. Although Ellis did file an ARP raising allegations of alleged violations under § 1983, the evidence is clear that he did not name Defendants Banks and King in his underlying grievance. Because he never filed an ARP against these two Defendants, his claims against them remain unexhausted, and should therefore

14

be dismissed. Plaintiff's claims against Lt. Morgan were exhausted under MDOC's grievance procedure, and therefore will proceed. Defendants Banks and King are entitled to summary judgment as a matter of law, and the undersigned recommends that summary judgment be granted as to Defendants Banks and King.

### b. ARP# MSP-21-106

Next, Plaintiff complains that he was denied access to legal services and/or assistance. *See* Doc. [1];[21]. He alleges Laura Hopson, who is in charge of the legal services assistance program, denied him access. Doc. [21] at 2. On February 26, 2021, Plaintiff filed an ARP form alleging:

> On February 14th 2021, I placed a complete and correct copy of my legal services request form in the pickup area for the legal service staff to pickup, giving them notice that I have a deadline of 3-2-21 to get my documents filed with the U.S. District Court. Ms. Laura Hopson came to this unit on 2-22-21 and picked up all of the other inmates requests forms, leaving mine[] behind. . . . I truly believe Ms. Price who was walking on Sunday nights is assisting Ms. Hopson in violating my constitutional rights by denying me access to the courts. I further believe there are others who are also aiding in this denial of due process.

Doc. [65-2] at 6; ARP Form (MSP-21-106), dated February 26, 2021. MDOC Defendants argue the Plaintiff's grievance was properly addressed, per the MDOC's ARP First-Step Response, but Plaintiff failed to appeal. Defendants contend the Plaintiff failed to exhaust his administrative remedies as to this claim, and therefore the claim against Defendant Hopson should be dismissed.

Plaintiff's ARP# MSP-21-106 was accepted, by Defendant Pennington, Director of ARP, on March 3, 2021. On April 1, 2021, the Inmate Legal Assistance Program ("ILAP") Director, Charles Hall responded using the First-Step Response Form. Doc. [65-2] at 3-5. In his response, Director Hall stated, "there were no ILAP services rendered February 15-19, 2021 due to the inclement weather. On February 22, 2021, all forms were picked up by Trey McIntyre for processing. . . . no request was received from you." *Id*. at 5. Further, Director Hall informed Plaintiff that "[he] show[ed] no detriment or missed deadline; therefore, there is no relief ILAP

15

can grant you." *Id*. MDOC records show the Plaintiff received Director Hall's First-Step Response on April 20, 2021, as Plaintiff's signature is on the Inmate Receipt. *Id*. at 3.

Pursuant to MDOC's ARP, the Plaintiff must complete a Second-Step Response expressing dissatisfaction with the First-Step Response. Plaintiff failed to pursue the appropriate next steps here. Instead, he filed the instant lawsuit, which was premature, thereby rending the ARP unexhausted. As previously provided herein, this Court has no authority to proceed with a lawsuit when the prerequisite grievance procedure was not exhausted before the lawsuit was filed. Accordingly, Plaintiff's claims against Defendant Hopson should be dismissed, and the undersigned recommends that summary judgment be granted as to Defendant Hopson.

### c. ARP, dated April 4, 2021

Plaintiff also alleges Defendant Pennington refused him legal services assistance. Doc. [21] at 2. On April 4, 2021, Plaintiff filed another ARP form alleging that he "placed into the hands of Mr. Pennington (legal service supervisor) my document . . . for filing with the trial court . . . . This man did not follow my instructions for he did not send the clerk a copy to stamp filed and send back to me." Doc. [65-3] at 3. Plaintiff further alleged Defendant Pennington "and his coworkers are retaliating against me for bringing actions against them for denying me due process of law and access to courts" related to him filing claims against staff members at C.M.C.F. *Id*. On April 8, 2021, Defendant Pennington signed a letter addressed to Plaintiff, advising there were two issues with his April 4, 2021 ARP – 1) the complaint was unclear and 2) he failed to specify the relief sought. *See* Doc. [65-3] at 2. The letter noted there was no relief requested in Plaintiff's ARP, and it also asked that Plaintiff "be more specific in [his] request." *Id*. MDOC Defendants submit the Plaintiff did not appeal or make any further inquiry into the issue raised in this grievance, and therefore, he failed to exhaust his administrative remedies regarding this claim.

16

There are no administrative records before the Court indicating the Plaintiff received Defendant Pennington's letter or filed an amended ARP form in compliance with the request for additional information. Notably, the Plaintiff was released from incarceration on or about May 10, 2021, approximately one month after Defendant Pennington's response. Plaintiff did not file a response to MDOC's motion for partial summary judgment or raise any argument during the Omnibus Hearing that he in fact followed up or provided additional information as requested. The Court finds the Plaintiff failed to provide the additional information requested or any response indicating satisfaction or otherwise regarding the subject ARP. Consequently, the Court finds the Plaintiff failed to complete the steps provided in MDOC's administrative grievance procedure, warranting dismissal of Plaintiff's claims against Defendant Pennington; the undersigned recommends that summary judgment be granted as to Defendant Pennington. .

## RECOMMENDATION

It is recommended that *Centurion Defendants' Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies* [53], should be GRANTED, and the case against Centurion Defendants Dr. William Brazier and Dr. Collette Scott should be DISMISSED with prejudice. It is further recommended that *Defendants' Motion for Partial Summary Judgment Based on Failure to Exhaust Administrative Remedies* [65], should be GRANTED, and the case against MDOC Defendants Ronald King, Richard Pennington, Laura Hopson, and Wendell Banks should be DISMISSED with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

In accordance with Local Uniform Civil Rule 72(a)(3) and 28 U.S.C. § 636(b)(1), any party may serve and file written objections to the proposed findings and recommendations within fourteen days after being served a copy of this recommendation. The District Judge at that time

may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this Report and Recommendation within fourteen days after being served with a copy shall bar that party from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected, except under grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1). An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections.

SO ORDERED this the 26th day of January, 2023.

                                                              /s/ LaKeysha Greer Isaac
                                                            UNITED STATES MAGISTRATE JUDGE