**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**ROBERT EARL ELLIS**                                                                            **PLAINTIFF**

**v.**                                                        **CAUSE NO. 3:21-cv-00047-TSL-LGI**

**LT. THELMA MORGAN**                                                                  **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court for a report and recommendation on *Defendant's Motion for Summary Judgment* [76], filed by Defendant Lieutenant Thelma Morgan ("Defendant" or "Lt. Morgan"), on May 19, 2023. On June 15, 2023, Plaintiff Robert Earl Ellis, Sr. ("Plaintiff" or "Ellis"), moved to sustain his cause of action [79], which this Court construes as a response to the instant motion. On June 22, 2023, Defendant filed a Reply [84], and on June 28, 2023, Plaintiff filed another Response [85] to Defendant's motion for summary judgment, which this Court liberally construes as a sur-reply.[1] Having considered the submissions, the record, and relevant law, the undersigned recommends that the motion for summary judgment [76] be granted, as discussed below.

## I.     Facts and Relevant Procedural History

Ellis, a postconviction inmate in the custody of the Mississippi Department of Corrections ("MDOC"),[2] brought this case, *pro se* and *in forma pauperis*, using a form available to prisoners for filing complaints for violating civil rights, pursuant to 42 U.S.C. § 1983. On January 25, 2021, Plaintiff filed suit against MDOC and its employees Lt. Morgan, Warden

---

1 Plaintiff failed to seek leave of Court before filing his sur-reply [85]. That said, the Court notes that Defendant did not move to strike the filing. Thus, this Court considers the sur-reply below.
2 At the time of the action, Plaintiff was incarcerated. He was released from incarceration and submitted a Change of Address [Doc. 15], advising this Court of his new address, on June 7, 2021.

Wendell Banks, Ronald King, Richard Pennington, Laura Hopson, Nurse Unknown Robinson, Dr. William Brazier, and Dr. Colette Scott. *See* Doc. [1], [21]. Plaintiff's complete allegations were set forth in his Complaint [1] and Amended Complaint [21] and were augmented by his sworn testimony at a *Spears*[3] hearing before the United States Magistrate Judge, on May 18, 2022. *See* Minute Entry, dated 5/18/2022; *see also* Transcript of Omnibus Hearing, Doc. [62].

On October 5, 2021, MDOC was dismissed from this lawsuit. *See* Order [22]. On March 6, 2023, Defendants Brazier, Scott, King, Pennington, Hopson, and Banks were also dismissed from the lawsuit, with prejudice. *See* Order Adopting Report and Recommendation [75]. Named Defendant Nurse Robinson was never properly identified, served with process or filed any response to Plaintiff's Complaint or Amended Complaint. *See* Report and Recommendations of Magistrate Judge, Doc. [70] at 2, n 2. Thus, this action proceeds against Lt. Morgan only.

Ellis was a postconviction inmate housed at Central Mississippi Correctional Facility ("CMCF") in Pearl, Mississippi when the alleged events giving rise to this lawsuit began; these events allegedly continued after he was transferred to the Mississippi State Penitentiary ("Parchman"). Plaintiff alleges constitutional violations. Plaintiff challenges the conditions of his confinement, alleging exposure to unsanitary mold, related injuries, and denial of medical care. Plaintiff claims that on May 7, 2020, he requested cleaning supplies from Lt. Morgan in order to clean the shower walls and floor, that he claims "was covered with black, green, and yellow slimy mold[-]like substance." Doc. [1] at 5; *see also* Doc. [21]. Plaintiff alleges Lt. Morgan, who was the commanding officer over his unit, refused him the cleaning supplies, cursed him out and told him to "get down on [his] hands and knees and clean it up." Doc. [21] at 1; *see also* Doc. [1] at 4; *see also* Omnibus Hearing Transcr., Doc. [62] at 9:3-9. Plaintiff alleges after he was denied the

---

3 *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

cleaning supplies, he fell in the shower and landed on the floor in the "mold-like substance." *Id*. As a result of the fall, Plaintiff claims he suffered a cut on the back of his left shoulder, that he lost skin on his buttock, experienced recurring rashes on his back, legs, arms, and head, and that he developed a fungus that spread to his blood stream, which caused adverse effects to his heart and breathing. Doc. [1] at 5; *see also* Doc. [21] at 2. He also claims that he was denied proper medical care to treat the injuries he sustained.

Defendant moves for summary judgment, arguing that Plaintiff cannot show a constitutional violation for inadequate conditions at CMCF or prove denial of medical care. Doc. [77] at 2, 7. She contends that she is entitled to qualified immunity for the claims brought against her in her individual capacity. *Id*. at 3.

## II.    Summary Judgment Standard

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). A genuine issue of material fact exists where a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). When ruling on a motion for summary judgment, the court must construe the facts and evidence in the light most favorable to the nonmoving party. *Ford, Bacon & Davis, LLC v. Travelers Ins. Co.,* 635 F.3d 734, 736 (5th Cir. 2011) (citing *Holt v. State Farm Fire & Cas. Co.,* 627 F.3d 188, 191 (5th Cir.2010)).

If the moving party meets its burden, the "nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "The nonmoving party cannot rely on metaphysical doubt,

conclusive allegations, or unsubstantiated assertions but instead must show that there is an actual controversy warranting trial." *Blanks v. Claiborne*, 2014 WL 1236005, at *2 (S.D. Miss. Mar. 25, 2014) (citing *Little,* 37 F.3d at 1075)). Absent proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Id*. (emphasis omitted). "It is improper for the district court to 'resolve factual disputes by weighing conflicting evidence, . . . since it is the province of the jury to assess the probative value of the evidence.'" *McDonald v. Entergy Operations, Inc.*, Civ. Action No. 5:03-cv-241-BN, 2005 U.S. Dist. LEXIS 43286, 2005 WL 2474701, at *3 (S.D. Miss. Apr. 29, 2005) (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980)).

The nonmovant is not required to respond to the motion until the movant properly supports its motion with competent evidence. *Russ v. Int'l Paper Co.*, 943 F.2d 589, 591 (5th Cir. 1991), *cert. denied*, 503 U.S. 987, 112 S. Ct. 1675, 118 L. Ed. 2d 393 (1992). If the moving party has made an affirmative showing that it is entitled to summary judgment, the burden shifts to the non-moving party to come forward with evidence that creates a genuine issue for trial. *Celotex*, 477 U.S. at 330. In deciding a motion for summary judgment, the Court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little*, 37 F.3d 1069, 1075)). The nonmovant cannot survive a proper motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle S. Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir. 1988); *see also Celotex*, 477 U.S. at 325-26. Instead, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his

favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### III.    Analysis

### a.    Qualified Immunity

Defendant claims the doctrine of qualified immunity shields her from Plaintiff's claims against her. A defendant's individual capacity is only protected from liability if the principle of qualified immunity applies. Even then, each official "is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The test for qualified immunity is well-established: "(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the defendant's conduct was objectively unreasonable in light of the clearly established law at the time of the incident." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998). Plaintiff has the burden of rebutting the defense, and if he fails to satisfy either prong, the defendant prevails. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (granting the lower courts permission to evaluate either prong of the qualified immunity analysis first). If the Court finds that there was no constitutional violation, the Court need not address the second part of the test. *Marks v. Hudson*, 933 F.3d 481, 483 (5th Cir. 2019); *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013).

Accordingly, this Court must examine the summary judgment record and determine whether Ellis has adduced sufficient evidence to raise a genuine issue of material fact suggesting that Defendant's conduct violated an actual constitutional right for each claim, and whether Lt. Morgan's conduct was objectively unreasonable considering clearly established law. Ellis's

claims against Lt. Morgan fall within the categories of denial of medical care and inadequate conditions of confinement.

### b. Conditions of Confinement

In his Complaint, Plaintiff alleges inadequate living conditions at CMCF. He claims unsanitary and unsafe mold conditions in the shower caused him to fall and injure himself. Doc. [1]. He brought suit against Lt. Morgan, alleging that she denied his request for cleaning supplies to clean the shower area that he alleges was "covered with black, green, and yellow slimy mold[-]like substance." *Id*. At the *Spears* Hearing, Plaintiff described the alleged incident in more detail.

> I apprised Lieutenant Thelma Morgan of the situation of the conditions of the bathing area. And her exact words to me was "Fuck you, n****er [expletive]. Clean it yourself. Get down on your hands and knees and clean it yourself." And I told her, I said, "Ma'am, I'm not asking you to clean it. I'm asking you for the materials, the supplies to clean it with." She slammed the door and went out.
>
> …
>
> When Warden Banks came around later that afternoon, I apprised him of the situation, of the condition of the shower area, because everybody had been out in the yard. It was hot. Everybody had been out in the yard, playing softball and basketball and running, and it was -- and they was going in there, and -- it was green and black and yellow mold all over the walls and the floors, and it's just slimy. You couldn't walk in there. And when I told Officer Banks about it, he told me it was up to Lieutenant Morgan, who was over the building, the building officer, who is Lieutenant Morgan. And I told him she was gone for the day, and we had this problem and we needed to take a shower.
>
> …
>
> Banks left. He left the building, and then I never heard anything else. So that evening, about 7:30, 8:00, I goes in there to take my bath, and splunk, there I am on the floor. I got a cut on the back of my shoulder, a cut on my buttocks. And so I cleaned myself up best I could with soap and water and a towel, and I asked the officer for bandages. They didn't have any. And so I put Vaseline on it to keep me from bleeding all over the place, messing up everything. Next day, after that night, I put in for a sick call. They didn't -- three days went by, nothing was done.

Doc. [62] at 9:3-9, 9:13-10:9.

Defendant moves for summary judgment on this claim, arguing that Plaintiff has failed to show that the alleged unsanitary condition was an ongoing problem or condition, that rises to the level of a constitutional violation. Doc. [77] at 5-6. Defendant also contends that Plaintiff cannot establish any subjective recklessness on her part, and therefore he cannot establish deliberate indifference in violation of the Eighth Amendment. *Id*. at 4. She argues that Plaintiff has set forth no evidence that she intended for Plaintiff to fall or get hurt. *Id*. She also argues that she had no legal duty to provide Plaintiff with cleaning supplies the moment that he chose to take a shower. *Id.* She also contends, "there is simply no evidence that Plaintiff had asked for cleaning supplies before or that Defendant was on notice of the alleged moldy condition." *Id*. Lt. Morgan asserts that she is entitled to qualified immunity against Plaintiff's claims brought against her individually. *Id*. at 3.

Plaintiff responds in opposition. Docs. [79], [85]. He contends that he has clearly established an Eighth Amendment violation, such that summary judgment should not be granted in favor of Defendant. *See* SurReply, Doc. [85] at 3. Plaintiff asserts that Defendant was constitutionally obligated to provide him with the requested cleaning supplies. Doc. [79] at 3. He argues "[w]hen Defendant Morgan and her Superiors refused to provide [him] with the requested cleaning supplies; this was a clear abridge of duty and [his] constitutional rights to proper care." *Id*. at 2. He also contends, under the Eighth Amendment, "[he] as well as all prison inmates have the constitutional protected right to be housed in a safe and clean housing unit; one free of health threat due to filth!" *Id*. He also argues that the "ill kept conditions in which [he] did find [him]self forced into . . . caused [his] injury. . . ." *Id*. Even more, he argues that Lt. Morgan acted deliberately "when she cursed [him] out and denied [him] cleaning supplies[.]" He contends "that it was due

to the deliberate[] and wanton act of denial . . . that he did contract and injure [himself,] which led to [him] contracting a bacterial blood infection. . . ." *Id*. at 2-3; *see also* Doc. [85] at 2.

In her Reply, Defendant reasserts that Plaintiff cannot prove the elements needed to establish an Eighth Amendment violation. *See* Reply, Doc. [84]. And she contends Plaintiff has not shown that mold in the shower amounts to a constitutional violation. *Id*. at 2 Finally, Defendant submits there is no medical evidence that Plaintiff's alleged exposure to mold caused a bacterial blood infection that supposedly resulted in other medical problems. *Id*. Defendant points to the medical records, which she produced as an exhibit, to show that Ellis never received any medical treatment for the alleged fall or any later injuries. *Id*. at 2-3. Defendant argues Plaintiff has provided no expert evidence on causation between the alleged fall and blood infection that led to the other alleged medical issues. *Id*. at 3.

In assessing a claim for qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991). After a careful analysis of Plaintiff's allegations about the conditions of his confinement at the CMCF, the Court finds that the Defendant is entitled to qualified immunity, as to Plaintiff's individual capacity claims, regarding his conditions of confinement. Plaintiff has provided no direct evidence that Defendant violated a clearly established constitutional right or that Defendant's alleged conduct – denial of cleaning supplies at a particular timeframe – was objectively unreasonable under the law. Defendant is therefore entitled to immunity from Plaintiff's claims related to inadequate conditions of confinement.

The Court notes that the Constitution "does not mandate comfortable prisons," but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed.

2d 811 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)). "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31-32, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993). The Eighth Amendment imposes duties on prison officials and requires that they provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832. Prison officials must also "take reasonable measures to guarantee the safety of the inmates." *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984). "It is cruel and unusual punishment to hold convicted criminals in unsafe conditions." *Helling*, 509 U.S. at 33.

A prison condition constitutes an Eighth Amendment violation only when two requirements are met. First, there is an objective requirement that the alleged condition be so serious as to deprive the prisoner of the "minimal civilized measure of life's necessities," such as some basic need. Second, the prison official must have been deliberately indifferent to the inmate's health or safety. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (footnote omitted). The United States Supreme Court defined the deliberate indifference standard as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Accordingly, a prison official's failure to eliminate a substantial risk of harm which he should have perceived, but in fact did not perceive, cannot support an imposition of liability under the Eighth Amendment. *Id.* at 838.

The Court finds that Plaintiff's allegations about the denial of cleaning supplies requested from Defendant on a particular date and time, do not rise to the level of a constitutional violation. Plaintiff alleges Lt. Morgan used derogatory language when denying his request for cleaning supplies. But Plaintiff offers no evidence to show that Lt. Morgan maliciously denied the request with intention of Plaintiff falling in the shower. Notably, at the *Spears* hearing, Plaintiff testified that he had "several" interactions with Lt. Morgan over the three months he was at CMCF. Doc. [62] at 14:12-17. Plaintiff's own testimony reveals that he requested cleaning supplies on only one occasion during his short time at CMCF. Thus, Plaintiff's alleged notification to Lt. Morgan of mold in the shower and his request for cleaning supplies was an isolated incident, rather than an ongoing issue of a persistent condition.

Plaintiff offers no evidence to show that Defendant knew of and disregarded "an excessive risk to inmate health or safety." Based on Plaintiff's testimony, this Court infers that Plaintiff was not denied cleaning supplies because of deliberate indifference but more likely because of inappropriate timing of the request. Plaintiff testified he also informed Warden Banks of the issue, and according to Plaintiff, Warden Banks informed him, "it was up to Lieutenant Morgan, who was over the building, the building officer, . . . [but she] was gone for the day." Doc. [62] at 9:20-23. Thus, the Court concludes that Plaintiff has failed to show that the Defendant was aware of a serious condition and disregarded it, and that such disregard reflects deliberate indifference to Plaintiff health or safety. Although the facilities are not kept to Plaintiff's liking, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 (*citing Ingraham v. Wright*, 430 U.S. 651, 674, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)). The Court finds that Plaintiff has failed to establish a violation of a clearly recognizable constitutional right. Plaintiff has also failed to show that the allege inadequate conditions of

his confinement were sufficiently dangerous and resulted in his injury and alleged subsequent medical issues.

### c. Denial of Medical Care

Plaintiff alleges he was denied medical care after he fell in the shower and suffered "the loss of skin on his b[uttock], recurring rashes on his back, legs[,] arms and in [his] head[,] . . . and that fungus entered [his] blood stream" causing "adverse effect[s] upon [his] heart and breathing." Doc. [1] at 5; *see also* Doc. [79] at 3. Plaintiff also alleges the denial of medical care by "the Defendants" led to him contracting a bacterial blood infection, which later led to the contraction of sepsis/septic shock in "October 2020." Doc. [85].

During the *Spears* hearing, Plaintiff testified that he sought medical care for injuries after the alleged fall in May 2020. *See* Doc. [62] at 12:1-5.

> [I] got a cut on the back of my shoulder, a cut on my buttocks. And so I cleaned myself up best I could with soap and water and a towel, and I asked the officer for bandages. They didn't have any. And so I put Vaseline on it to keep me from bleeding all over the place, messing up everything.
>
> Next day, after that night, I put in for a sick call. They didn't -- three days went by, nothing was done. Nurse came to the building. And Banks came back to the building on Monday. And I asked him again about it. He asked me, he say, " Ain't anybody seen you?" I said, "No, sir, I haven't. I haven't seen a soul." I said, "I put in" -- he said, "You put in sick call?" I said, "Yes, sir, I have." I said, "I put in two sick calls." I said, "And I talked to the nurse when she come to get medicine, and she told me I had to put in sick call." So I gave her one sick call to take back up to the people -- to the nurse -- to the infirmary with her. So she did, as far as I know of, and I never heard anything. So I put in another one. And I got a piece of gauze from a young man -- four-by-four gauze pad, and I used some duct tape to put this bandage on my buttocks. And nothing was done. Weeks went by, nothing was done. …
>
> And I asked her, I confronted Nurse Robinson about it, and she told me that she hadn't seen no sick call form. . . . Two days later, I was on a bus going to Parchman. And that's -- and when I got to Parchman, there was nothing done.

*Id*. at 10:3-23.

Defendant challenges Plaintiff's claims that he requested medical care after he allegedly fell in the shower. Defendant argues none of Plaintiff's allegations are supported by admissible evidence, and she points to MDOC's medical records from May 2020 for support. Doc. [77] at 7; MDOC's Medical Records for Plaintiff, Exhibits B and C, Docs. [83], [83-1]. While Defendant admits that Plaintiff did in fact submit "sick calls" for medical care, she argues that Plaintiff never sought medical care for injuries sustained after the alleged fall. *Id*. According to Defendant, the records show that Plaintiff either requested or received medical care for unrelated issues. *Id*. at 7-8. On May 4, 2020, Plaintiff was seen by a dentist after he had a seizure and fractured several teeth. *Id*. at 8; (citing Exh. C, Doc. [83-1]). On May 7, 2020, the day of the alleged incident, Plaintiff requested a COVID-19 test; he was tested on May 13, 2020. *Id*. at 7-8; Doc. [83-1]. On May 13, 2020, Plaintiff sought medical assistance for broken glasses, and on May 14, 2020, Plaintiff sought medical care for a possible hernia. *Id*.; Docs. [83] and [83-1], respectively.

Noting the foregoing, Defendant also states that Plaintiff's claims are not credible, because the claims contradict Plaintiff's own testimony at the *Spears* hearing. She references the following dialogue:

> MR. HALL:    In terms of your sick calls, when was your first sick call?
>
> MR. ELLIS:    The first sick call was this very same day that I had the incident, the incident occurred.
>
> . . .
>
> MR. ELLIS:    And I never received no sick call. I never received any treatment. All they did was take my money.
>
> MR. HALL:    Did you treat for a hernia at that time?
>
> MR. ELLIS:    No, sir.
>
> MR. HALL:    Did you treat for broken eyeglasses at that time?
>
> MR. ELLIS:    No.

*Id*. at 77, n. 3-4; *see also* Doc. [62] at 13:15-18; 14:5-11.

Defendant also argues Plaintiff has failed to show any medical evidence to support his claim that he developed fungus in his bloodstream after the alleged fall. *Id*. at 8. She also contends Plaintiff's claims must fail, because he has provided no expert support that his alleged exposure to mold caused his blood infection. *Id*. Thus, Plaintiff asserts she is entitled to summary judgment. She also submits that Plaintiff has failed to link his alleged physical injury to the alleged constitutional violation, under PLRA. *Id*.

The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Fifth Circuit has clearly stated that "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006), citing *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). And the Fifth Circuit has stated, "[d]eliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). The standard for finding "deliberate indifference" is a subjective inquiry, and the prisoner must show that the jail officials were actually aware of the risk, yet consciously disregarded or ignored it. *Farmer*, 511 U.S. at 837-839. Therefore, actual knowledge and conscious disregard of the risk of harm to the plaintiff is required before liability can be found. *Id.* Furthermore, deliberate indifference cannot be simply inferred from a prison official's mere failure to act reasonably, i.e., from negligence alone. *Lawson v. Dallas County*, 286 F.3d 257, 262-63 (2002), citing *Hare v. City of Corinth*, MS, 74 F.3d 633, 649 (5th Cir. 1996).

To prevail on a claim of deliberate denial of medical care, a plaintiff must show that the defendant had "subjective knowledge of a substantial risk of serious medical harm" and was deliberately indifferent in disregarding that risk. *Nerren v. Livingston Police Dept.*, 86 F.3d 469, 473 (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)). The Fifth Circuit has held that a plaintiff alleging such a claim must "establish more than the typical quantum of evidence necessary to overcome a qualified immunity defense." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000). A plaintiff "must show not only that the defendants' actions in failing to provide medical attention . . . were objectively unreasonable, but also that defendants intended the consequence of those actions." *Id.*

The facts in Plaintiff's case, as stated by him, and as augmented by his medical records, simply do not rise to a finding of "deliberate indifference." Plaintiff's own testimony contradicts his medical records. Plaintiff sought and received medical care while he was incarcerated at CMCF. *See* Medical Records, Docs. [83], [83-1]. Yet a review of Plaintiff's medical records, as submitted by Defendant, reveals Plaintiff made no requests for medical evaluation related to the alleged fall or related injuries. Furthermore, Plaintiff testified that he was transferred from CMCF to Parchman shortly after the alleged incident. He provided no evidence to support his claims that the alleged later injuries, including a blood infection, were interrelated or linked to the initial injuries he alleged sustained while incarcerated at CMCF.

The Court finds that Plaintiff has failed to establish deliberate indifference on the part of the Defendant, because he has neither alleged nor shown Defendant's actual, subjective awareness of the allegedly unconstitutional condition. Since Plaintiff's factual assertions against Lt. Morgan are those of negligence, he has alleged no constitutional violation under the applicable law. His claims related to his medical care do not rise to the level of a constitutional violation under *Gobert*

*v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Thus, Plaintiff's Eighth Amendment claims are legally insufficient to establish liability against Defendant Lt. Morgan.[4] The Court finds that Plaintiff has failed to establish a violation of a constitutional right. Because there was no constitutional violation, the Court need not address the second part of the test – whether the defendant's conduct was objectively unreasonable in light of the clearly established law at the time of the incident.

Defendant contends she is also entitled to qualified immunity regarding this claim. As discussed above, Plaintiff's assertions here do not establish a constitutional violation under the applicable law. Accordingly, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). Defendant is entitled to qualified immunity, and summary judgment should be granted in favor Lt. Morgan.

## **RECOMMENDATION**

It is recommended that *Defendant's Motion for Summary Judgment* [76], should be GRANTED, and the case against Lieutenant Thelma Morgan should be DISMISSED with prejudice. It is also recommended that Nurse Unknown Robinson be dismissed without prejudice, as Plaintiff abandoned his claims against her.[5]

---

4 The Court notes that Plaintiff references "the Defendants" in his responses. All Defendants, except Lt. Morgan, were previously dismissed, with prejudice, from this lawsuit. Therefore, the Court need not consider Plaintiff's claims against those defendants.

5   *See* Doc. [70] at 2, n 2. Nurse Robinson has never been properly identified, served with process or filed an Answer. On October 6, 2021, the Court entered an Order [23] directing the Clerk of Court to issue a Notice of Lawsuit to Defendants. A Request for Waiver of Service [25] was sent to Defendants Nurse "Unknown" Robinson, Dr. "Unknown" Brazier, and Dr. "Unknown" Scott ("Centurion Defendants"). On November 10, 2021, Notices of Appearance and a Waiver of Service was filed on behalf of Dr. William Brazier. See Docs. [28-30]; [34]. On November 12, 2021, a Waiver of Service [35] was filed on behalf of Dr. Scott. A Response [36] to Court's Order [23] was filed by counsel for Centurion of Mississippi, LLC, who appeared specially for the sole purpose of responding to the Order [23]. In its response Centurion advised that, after investigating, it could not determine the identity of Nurse Robinson. Centurion advised it could not locate any individuals working with Centurion at Central Mississippi Correctional Facility under the name "Robinson." Centurion did, however, identify one possible healthcare professional named Bridget Robinson, but it advised Bridget Robinson was a temporary worker with Maxim

## NOTICE OF RIGHT TO OBJECT

In accordance with Local Uniform Civil Rule 72(a)(3) and 28 U.S.C. § 636(b)(1), any party may serve and file written objections to the proposed findings and recommendations within fourteen (14) days after being served a copy of this recommendation. The District Judge at that time may accept, reject, or modify, in whole or in part, the findings, or recommendations made by the Magistrate Judge. The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with instructions.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this Report and Recommendation within fourteen days after being served with a copy shall bar that party from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected, except under grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1). An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections.

SO ORDERED this the 31st day January, 2024.

/s/ LaKeysha Greer Isaac
UNITED STATES MAGISTRATE JUDGE

---

Healthcare Staffing. Based on the information provided, Centurion advised it could not waive service on behalf of the named defendant, identified as Nurse Robinson. See Doc. [36] at 1. A copy of the Response [36] was provided to Plaintiff. See Certificate of Service, Doc. [36] at 3. On November 18, 2021, the Court ordered Plaintiff to provide more information to identify Nurse Robinson or advise as to whether he wished to voluntarily dismiss this named defendant from the lawsuit. See Doc. [37]. From the docket, it does not appear Plaintiff responded to the Court's Order [37]. Therefore, Nurse Robinson has never been identified, served or filed any Response to Plaintiff's Complaint or Amended Complaint. MDOC was dismissed from this lawsuit, via Order [22], on October 5, 2021.